IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **BALTIMORE LINE HANDLING COMPANY** | |
| v. | CIVIL NO. WDQ-09-3018 |
| **SHANNON BROPHY, et al,** | |

<u>**MEMORANDUM OPINION**</u>

**I. Introduction**

Plaintiff Baltimore Line Handling Company ("Baltimore Lines") brought an admiralty claim against Ms. Shannon Brophy and her father Mr. Kevin Brophy ("the Brophys") under 28 U.S.C. § 1333. (Paper No. 1 ¶ 1). Plaintiff alleged that the Brophys failed to pay for vessel line handling services the parties contracted to have performed. (<u>Id.</u>). The Brophys were properly served but did not answer the complaint or otherwise participate in the ensuing litigation. Mr. Brophy has since passed away. (Paper No. 14 at 5). The Court entered default as to Shannon Brophy (Paper No. 8). Presently before the Court is plaintiff's motion for default judgment against Ms. Brophy. (Paper No. 11).

For the reasons explained below, the Court **DENIES** plaintiff's motion for default judgment.

**II. Factual Background**

As discussed more fully below, in determining whether to grant default judgment, courts accept as true all well-pleaded factual allegations in plaintiff's complaint and any attached affidavits except those pertaining to damages. See, e.g., Monge v. Portofino Ristorante, 2010 WL 1759556, at *3 (D. Md. 2010).

Since at least 2006, the Brophys were sole shareholders of Vessel Operations, Inc. and, later, Patriot Lines and Security, LLC, which managed terminal operations at Piney Point, Maryland. (Paper No. 1 ¶ 4). Vessel Operations, Inc. is a registered Maryland corporation in good standing. (Paper No. 14, Ex. B ¶ 4). Patriot Line and Security, LLC is a registered entity forfeited by the State of Maryland in October 2009 "for failure to file property return for 2008." (Paper No. 14, Ex. C). During the parties' course of dealings, the Brophys, "doing business as" their corporate entities, would

> contract[] with Baltimore Lines to manage the lines to and from the vessels, arriving and departing. Agents or dispatchers for the various vessels, [would] contact[] Baltimore Lines, provid[e] the arrival information, and Baltimore Lines [would] then dispatch[] trained linehandlers, to assist with the berthing and un-berthing of the vessels. Thereafter, Baltimore Lines would regularly invoice Shannon Brophy and/or Kevin Brophy [doing business as] "Patriiot Lines," [sic] for Baltimore Lines services.

(Id. ¶ 5). Vessel Operations, Inc. and Patriot Lines and Security, LLC would, in turn, charge their customers for the

cost of services provided by plaintiff. But these charges were not remitted to plaintiff. (Id. ¶ 6).

Plaintiff regularly generated invoices for the services it provided. These were addressed to "Vessel Operations ATT. Kevin Brophy" or "Patriot Lines ATT. Shannon Brophy." (Paper No. 13, attachment 2 at 1-8). However, as is custom in the linehandling industry, the contracts were oral. (Paper No. 14 at 2). Throughout their course of dealings, plaintiff believed that it was contracting with the individual Brophys "doing business as" their corporate entities, (Paper No. 1 ¶ 3; Paper No. 13 at 1; Paper No. 14, Ex. B ¶ 6). And, the oral contracts between the parties, "based on Baltimore Line's understanding, committed the Brophys to the agreements' terms." (Paper No. 14 at 2).

### III. Default Judgment Standard

"An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." F. R. Civ. P. 8(b)(6). Thus, in reviewing motions for default judgment, courts "accept[] as true the factual allegations in [] complaint[s] as to liability." Agora Fin, LLC v. Samler, 2010 WL 2899036, at *2 (D. Md. 2010) (citing Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001)). However, defendant's failure to participate in the litigation does not require the Court to accept plaintiff's legal conclusions. Cragin v. Lovell, 109 U.S. 194, 199 (1883)

3

(holding that "a mere conclusion of law … is not admitted by demurrer or default"). Moreover, "[i]t … remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action." Id. (citing Ryan, supra; 10A Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default ... and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.")).

**IV. Analysis**

In support of its motion for default judgment, plaintiff urges this Court to ignore the corporate entities' shields of limited liability by rendering a novel interpretation of the Maryland statute governing the liability of individual LLC members. (Id. at 3). Alternatively, plaintiff contends that, even if limited liability does apply, this Court should exercise its equity power to pierce the corporate veil of Vessel Operations, Inc. and Patriot Lines and Security, LLC. (Id. at 3-8). The Court declines to do either.

  A. <u>Limited Liability Shields Ms. Brophy's Personal Assets.</u>

Maryland statutory law provides that an LLC member is not "personally liable for the obligations of the limited liability company, whether arising in contract, tort, or otherwise, solely by reason of being a member." Md. Code Ann., Corporations and

4

Ass'ns, § 4A-301. State courts however, have held that LLC members may be held personally liable in certain circumstances. See Allen v. Dackman, 413 Md. 132, 991 A.2d 1216 (2010) (agreeing with other jurisdictions that, like corporate officers, LLC members may be held liable for torts they personally commit, inspire, or participate in through their partnerships). Pointing to judicial interpretations of similar statutes enacted by other states, the Allen court reasoned that the use of the term "solely" in the Maryland statute suggests that limited liability may not apply when an LLC member has been personally implicated in a tort involving the partnership. Id. at 1229.

Plaintiff urges the Court to extend the holding of Allen such that "LLC members [are] also [] held personally liable when they are party to a contract." (Paper No. 14 at 3). While tortious conduct and contractual breaches are analogous in some ways, two major arguments weigh against making such an extension.

First, the Allen decision was rendered by Maryland's highest court interpreting a Maryland statute. This Court is reluctant to adopt a novel interpretation of a state statute with wide-ranging implications for the personal liability of LLC members across the state. Second, and perhaps more importantly, Allen involved an alleged violation by defendant LLC members of

5

the Baltimore City Housing Code. <u>Allen</u>, 413 Md. at 136-137, 991 A.2d at 1218. The <u>Allen</u> court, therefore, drew additional authority from a provision of the Code which provided that "[w]henever a corporation shall violate any provision of this Code, such violation shall be deemed to be also that of the individual directors, officers, or agents of such corporation who shall have authorized, ordered, or done any of the acts." <u>Id.</u> In this case, there is no similar supplemental authority to suggest that any Maryland lawmaking body intended for LLC members to be personally liable for contractual breaches in general or specifically with respect to the marine line handling business.

Therefore, this Court cannot ignore the limited liability shields of defendant's corporate entities in order to allow plaintiff to recover damages from defendant.

B. <u>This Court Cannot Pierce the LLCs' Corporate Veil.</u>

Plaintiff argues that if, as this Court has found, "Brophy were somehow entitled to the limited liability protection afforded to corporate officers … this Court should nevertheless pierce the corporate veil and hold Brophy personally liable." (Paper No. 14 at 4). To support this line of reasoning, plaintiff relies on its president's affidavit to the effect that

> [plaintiff] always dealt with one of the Brophys personally whenever its services at Piney Point were needed and requested. [Plaintiff] always understood –

6

> as confirmed by the Brophys [sic] conduct and the
> invoicing to the Brophys – that both "Vessel
> Operations" and "Patriot Lines" were merely "doing
> business as" names for the Brophys.

(Paper No. 14, Ex. B at 2). Plaintiff argues that the affidavit "paints a picture of Vessel Operations and Patriot Lines as closely-held companies with two known owner-employees: Kevin Brophy (now deceased) and Shannon Brophy" and "indicates that both companies were merely 'doing business as' names for the Brophys, not actual corporate entities existing independently from the Brophys' personal endeavors." (Paper No. 14 at 5). While assuming as true plaintiff's allegations as to its state of mind when dealing with the Brophys, the Court notes that the invoices generated by plaintiff were addressed directly to the corporate entities, with the shareholder names listed under the corporate names. (Paper No. 13, attachment 2 at 1-8). This suggests that plaintiff was aware of the corporate forms during the parties' course of dealings.

Moreover, it does not necessarily follow from the statements in the affidavit and plaintiff's well-pleaded allegations in its complaint that "the Brophys were parties to the agreements," or that, therefore, "they are personally liable for the debts incurred." (Paper No. 14 at 6). Assuming that the corporate entities under the Brophys' control were nothing but mere facades or "alter egos" does not automatically empower this

7

Court to pierce the corporate veil. When a person or entity exercises such extensive control over a corporate entity so as to make the latter a mere instrumentality of the former, courts have the power to disregard the corporate fiction to deal with the underlying reality by applying the so-called "alter ego" doctrine. Dixon v. Process Corporation, 38 Md.App. at 653, 382 A.2d at 898-899. (1978). But "whether a court is to equitably exercise the 'alter ego' doctrine as to a particular entity must be determined in accordance with the law of the forum state." Wilshire Credit Corp. v. Karlin, 988 F. Supp. 570, 574 (D. Md. 1997) (citations omitted).

In Maryland, a corporation and its stockholders – or even a single stockholder – are wholly separate entities. Their liabilities are thus also separate. DeWitt Truck Brokers, Inc. v. W. Ray Flemming Co., 540 F.2d 681, 683 (4th Cir. 1976). The fiction of the wholly separate corporate form is jealously guarded by courts in Maryland, where, as a matter of public policy, the "[p]ower to pierce the corporate veil is to be exercised 'reluctantly' and 'cautiously.'" Id. (quoting Pardo v. Wilson Line of Washington, Inc., 414 F.2d 1145, 1149 (C.A.D.C. 1969); Country Mai, Inc. v. Haseotes, 299 F. Supp. 633, 637 (E.D.P.A. 1969)).

Under Maryland law, a court may pierce the corporate veil only to prevent fraud or enforce a paramount equity. See, e.g.,

8

Bart Arconti & Sons, Inc. v. Ames-Ennis, Inc., 275 Md. 295, 310, 340 A.2d 225, 234 (1975); Starfish Condominium Ass'n v. Yorkridge Service Corp., Inc., 295 Md. 693, 458 A.2d 805 (1983); Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc., 126 Md. App. 294, 728 A.2d 783 (1999); Dixon v. The Process Corp., 38 Md. App. 644, 656, 382 A.2d 893, 900 (1978) ("We make it clear that the rule of law in this State is that no matter how flimsily woven is the corporate curtain, it may not be flung aside except to prevent fraud or endorse [enforce] a paramount equity.") (citing Bart Arconti, supra). The alter ego doctrine, then, is not a separate basis for piercing the veil, but is rather subsumed "in the notion of paramount equity." Hildreth v. Tidewater Equipment Co., Inc., 378 Md. 724, 739, 838 A.2d 1204, 1212-13 (2003). Therefore, in order to pierce the corporate veil, plaintiff's well-pleaded allegations and evidence must be tantamount to fraud or invoke a paramount equity.

Courts have described as "herculean" the challenge facing a party seeking to pierce the corporate veil on these grounds. Dixon, 38 Md. App. at 645, 382 A.2d at 894 (1978) (stating that since "[a] commercial corporation is a legal entity conceived by the mind of man and legitimated by statute for the avowed purpose of achieving maximum profit with a minimum exposure to liability[, …] woe onto the creditor who seeks to rip away the

9

corporate façade"); see also Residential Warranty Corp., 126 Md. App. at 309, 728 A.2d 790-791 (noting that "Maryland is more restrictive than other jurisdictions in allowing a plaintiff to pierce a corporation's veil").

      i) *Fraud*

Maryland courts require parties seeking to pierce the corporate veil by alleging fraud to meet a higher standard and make a more vigorous factual showing than do other jurisdictions. Plaintiffs alleging fraud cannot rely on a preponderance of the evidence but must rather "present[] clear and convincing evidence." Residential Warranty Corp., 126 Md. App. at 308, 728 A.2d at 790 (citing Dixon, 38 Md. App. at 656, 382 A.2d at 900 (concluding that "the law of Maryland mandates that proof of fraud in a civil action, either in law or in equity, must be clear and convincing") (citations and internal quotation marks omitted)); see also Starfish Condominium, 295 Md. at 714, 458 A.2d at 805 (requiring "the one charging fraud to establish by clear, specific facts, acts that in law constitute fraud"). To find that the corporate cloak has been used to perpetuate fraud, Maryland courts have looked for "deliberate intention and purpose of cheating and defrauding … the other party to the contract" on the part of corporate officers. Colandrea v. Colandrea, 42 Md. App. 421, 432, 401 A.2d 480, 486 (1979).

Colandrea is instructive as to the specific acts and degree of fraudulent intent Maryland courts require to pierce the corporate veil. There, a husband and former shareholder in a corporation brought suit against the corporation, his ex-wife (the remaining shareholder), and her newly formed corporate entities in order to enforce payment of certain promissory notes made to him in the name of the marital corporation. Id. at 422, 401 A.2d at 481. In allowing the ex-husband to pierce the corporate veil, the Court of Special Appeals found clear and convincing evidence of fraudulent intent in the record, which showed that the ex-wife fraudulently conveyed the assets of the former, marital corporation – all while profiting from its established business under the auspices of her newly formed entities. Id. at 425, 401 A.2d at 483. These "corporate machinations," the Colandrea court concluded, were designed to accomplish but one goal: to allow the ex-wife to "continue the profitable business of [the marital corporation] without its attendant obligations to [her ex-husband]." Id.

Arconti, the decision plaintiff relies on for piercing the corporate veil, shows Maryland courts' strong reluctance to do so except in the most obvious cases of fraud. There, the record showed that, in order to avoid certain contractual obligations, defendant officers controlling three corporations had deliberately used two of their entities "to keep the … business

of [the third entity] but without leaving any real asset [of the third entity] in that corporation." 275 Md. at 309, 340 A.2d at 233. Nevertheless, the Court of Appeals reversed the lower court decision to pierce the corporate veil, finding no Maryland authority for the proposition that a judicial desire to "prevent[] an evasion of legal obligations" suffices to hold individual shareholders accountable for corporate liabilities. Id. at 311-312, 340 A.2d at 235.

Here, plaintiff argues that piercing the veil is appropriate to prevent alleged fraud perpetuated by defendant using corporate entities under her complete control. (Paper No. 14 at 6). Specifically, plaintiff points to the forfeiture of Patriot Lines' Maryland corporate status (Paper No. 14, Ex. C) not long after plaintiff submitted its final invoice. (Id.). Plaintiff argues that defendant's failure to renew her LLC's corporate status reflected her "fraudulent intention[] … to shield herself from personal liability for the debts Patriot Lines incurred while it was an active Maryland corporation." (Id.). But while it certainly could suggest that defendant was using the corporate entities under her control to evade her legal and contractual obligations, this sequence of events, on its own, does not add up to a clear and convincing case of fraud. Mere evasion of a legal or contractual obligation is not tantamount to fraud. See Arconti, supra. Accepting as true all

of plaintiff's factual allegations and all affidavit statements, the Court finds that plaintiff has not made out a clear and convincing case of misrepresentation, as did the plaintiff in Colandrea. Nor do plaintiff's well-pleaded allegations and affidavit statements support a clear and convincing finding of a "deliberate intention" on defendant's part of cheating or defrauding plaintiff. Therefore, this Court declines to exercise its discretionary power to pierce the corporate veil on the basis of fraud.

      iii) *Paramount Equity*

The Maryland Court of Appeals has expressly declared that the corporate veil shall be pierced when necessary to enforce a paramount equity. Arconti, 275 Md. at 310, 340 A.2d at 234. However, it has yet to do so. Residential Warranty Corp., 126 Md. App. at 307, 728 A.2d at 789 ("Despite the proclamation that a court may pierce the corporate veil to enforce a paramount equity, arguments that have urged a piercing of the veil for reasons other than fraud have failed in Maryland Courts.") (citing Travel Committee, Inc. v. Pan American World Airways, Inc., 91 Md. App. 123, 156, 603 A.2d 1301, 1317 (1992)). Indeed, the Maryland Court of Appeals has yet to define what constitutes a paramount equity or to identify one which outweighs the public policy interest in limited corporate liability. Travel Committee, 91 Md. App. at 158, 603 A.2d at 1318

("Notwithstanding its hint that enforcing a paramount equity might suffice as a reason for piercing the corporate veil, the Court of Appeals to date has not elaborated upon the meaning of this phrase or applied it in any case of which we are aware."); see also Michael Epperson & Joan M. Canny, *The Capital Shareholder's Ultimate Calamity: Pierced Corporate Veils and Shareholder Liability in the District of Columbia, Maryland, and Virginia*, 37 CATH. U. L. REV. 605, 621 (1988) (noting that "[i]n practice, … [Maryland] courts simply have not found an equitable interest more important than the state's interest in limited shareholder liability").

Maryland courts "accord the corporate form an extraordinary measure of deference." 37 CATH. U. L. REV. at 621. This explains why the Court of Appeals, for example, refused – in the absence of clear and convincing showing of fraud – to pierce the corporate veil of a federal savings and loan association to hold it liable for a subsidiary's sale of residential units in clear violation of certain statutory warranties. Starfish Condominium, 295 Md. 693, 458 A.2d 805. Whatever equities weighed in favor of piercing the veil in Starfish did not exceed those "ordinary to expectation of limited liability" – the corporate officers' disregard for many corporate formalities notwithstanding. Id. at 714, 458 A.2d at 816.

Hildreth is also indicative of the Maryland Court of Appeal's unwillingness to find the requisite paramount equity. There, a Maryland construction equipment lessor brought suit to enforce the terms of the lease against the sole shareholder of the lessee, a New Jersey corporation unregistered in Maryland but operating under a name identical to that used by a registered Maryland corporation. Hildreth, 378 Md. at 728-29, 838 A.2d at 1206-07. The lessor sought to hold the defendant shareholder individually liable since, during the parties' negotiations, he "neither said nor was asked where [his] company was incorporated." Id. at 729, 838 A.2d at 1207. The Maryland Court of Appeals however, ruled that the shareholder could not be held personally liable, even though, as the courts below had found, he was the sole shareholder; he "was 'personally involved' in the business transaction"; he continued to do business in Maryland under a name he knew to be registered by a domestic corporation; his doing so was contrary to public policy; and his actions suggested a clear intent to evade legal obligations. Id. at 733-34, 838 A.2d at 1209. Absent a showing of fraud, "those circumstances, individually or in combination, [did] not suffice" to invoke a paramount equity. Id. at 734, 838 A.2d at 1209.

Here, relying on its president's affidavit, plaintiff alleges that "stock ownership [in Patriot Lines and Vessel

15

Operations] was restricted to the Brophys and that the two companies existed as a 'façade for the [Brophys'] operations.'" (Paper No. 14 at 5). But even assuming that not a single corporate formality was adhered to may not be enough to create a paramount equity favoring plaintiff. See 37 CATH. U. L. REV. at 621 (concluding that, in Maryland, "neither an utter disregard for corporate formalities nor the use of the corporate form by an individual as a shield from liability will lead to piercing the corporate veil unless accompanied by actual common law fraud"). Plaintiff urges the Court to pierce the corporate veil since "it is extremely unlikely that [it] can recover from either corporate entity." It also argues that "it is extremely likely that plaintiff will never receive payment for the services it performed – a paramount inequity." (Paper No. 14 at 7). But as the Arconti, Hildreth, Starfish, and Dixon line of cases shows, Maryland courts would be highly unlikely to find a paramount inequity in one business's inability to recover damages in a contractual dispute with another. Plaintiff thus finds itself in an unenviable position, but the inequities it has suffered do not rise above those "ordinary to an expectation of limited liability." See Starfish, supra. Therefore, the Court does not find a paramount equity at stake and declines to pierce the corporate veil on this ground.

**V. Conclusion**

While this result may seem harsh and manifestly unfair, the governing law compels it. Thus in light of the foregoing, the Court **DENIES** plaintiff's motion for default judgment.


Date: 8/27/10                         /s/
                              Susan K. Gauvey
                              United States Magistrate Judge