IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Baltimore Line Handling Co.,
    *Plaintiff,*

v.

Shannon Brophy, *et al.*
    *Defendants.*

Civil Action No.: ELH-09-03018

## MEMORANDUM

This case involves a breach of contract claim arising under the Court's admiralty jurisdiction. Baltimore Line Handling Company ("Baltimore Line"), plaintiff, has sued Shannon Brophy, defendant, seeking $119,475 allegedly due and owing for "line handling services" provided by Baltimore Line to Ms. Brophy at the Piney Point marine terminal from 2006 to 2009. *See* Complaint (ECF 1).[1] Ms. Brophy was personally served on February 19, 2010 (ECF 6, Ex. 1), but did not file an answer or otherwise participate in the litigation. Accordingly, the Clerk entered a default against her on March 15, 2010 (ECF 8).

Now pending before this Court is Baltimore Line's Motion for Entry of Default Judgment ("Default Motion") (ECF 11). By Order entered March 17, 2010 (ECF 10), the Court (Quarles, J.)[2] referred the Default Motion to Magistrate Judge Susan K. Gauvey. She issued her Report and Recommendations ("Report") on October 4, 2010 (ECF 17), recommending the

---

[1] Baltimore Line also named Brophy's father, Kevin Brophy, as a defendant, but subsequently dismissed the claim against him after learning of his death. *See* Notice of Voluntary Dismissal (ECF 5).

[2] This case was transferred from Judge William D. Quarles, Jr. to me on January 17, 2011.

denial of Baltimore Line's Default Motion. On October 15, 2010, Baltimore Line timely filed its "Objection/Response" to the Report. (ECF 19).

In addition, Baltimore Line has filed a "Motion for Sanctions and Order Compelling Discovery" ("Sanctions Motion") (ECF 21). It concerns a deposition of Ms. Brophy on December 20, 2010, at which she appeared without counsel and refused to answer any questions.

Both the Default Motion and the Sanctions Motion are ripe for decision, and no hearing is necessary. *See* Local Rule 105.6. For the reasons that follow, the Court overrules Baltimore Line's Objection/Response; adopts Judge Gauvey's Report; denies the Default Motion, without prejudice; and, as to the Sanctions Motion, grants it in part and denies it in part.

### Standard of Review of a Magistrate Judge's Report and Recommendation

Under the Magistrate Judges Act, 28 U.S.C. § 636, a district judge may designate a magistrate judge to conduct hearings (if necessary) and report proposed findings of fact and recommendations for action on a dispositive motion. *See* 28 U.S.C. § 636(b)(1)(B); Fed R. Civ. P 72(b); *see also* Local Rule 301.5.b. A motion for default judgment is a dispositive motion for purposes of the Magistrate Judges Act. *See Callier v. Gray*, 167 F.3d 977, 980-81 (6th Cir. 1999).

A party who is aggrieved by a magistrate judge's report and recommendation as to a dispositive motion must file "specific written objections to the proposed findings and recommendations" within fourteen days. Fed. R. Civ. P. 72(b)(2). The district judge must then "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). But, the Court "need only conduct a *de novo* review of those portions of the Magistrate Judge's Report and Recommendation to which objection is made."

*Chavis v. Smith*, 834 F. Supp. 153 (D. Md. 1993).  As to those portions of the report for which there is no objection, the district court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315-16 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee note).[3]

### Factual and Procedural Summary

Baltimore Line is located in Baltimore County, Maryland.  It "provides marine line handling services," by which it supplies "trained linehandlers" who "assist with the berthing and un-berthing of the vessels" by "manag[ing] the lines to and from the vessels." Complaint ¶¶ 2 & 5.  According to the Complaint, Ms. Brophy and her late father, Kevin Brophy, "conducted and managed terminal operations at Piney Point, Maryland, including the berthing, loading, and unloading of vessels, doing business as 'Patriot Line and Security Line LLC.'"  *Id.* ¶ 4.

Baltimore Line alleged that from 2006 to 2009, the Brophys "contracted with Baltimore Line[] to manage the lines to and from the vessels, arriving and departing" at the Piney Point terminal.  *Id.* ¶ 5.  According to plaintiff, the Brophys would invoice the owners or operators of the vessels for the line handling services provided by Baltimore Line, and Baltimore Line in turn "would regularly invoice Shannon Brophy and/or Kevin Brophy d/b/a 'Patriiot [sic] Lines,'" for its services.  *Id.* ¶¶ 5-6.  However, Baltimore Line claimed that the Brophys did not remit payment to Baltimore Line for invoiced services performed from 2006 to 2009, totaling

---

[3] In contrast, a non-dispositive motion referred to a magistrate judge is subject to deferential review by the district court, under a "clearly erroneous or contrary to law" standard. Fed R. Civ. P. 72(a).  *See, e.g.*, *Huggins v. Prince George's County*, ___ F. Supp. 2d ____, ____, 2010 WL 4484180, at *9 (D. Md. Nov. 9, 2010); *Int'l Ass'n of Machinists and Aerospace Workers v. Werner-Masuda*, 390 F. Supp. 2d 479, 485-86 (D. Md. 2005).

$119,475.  Baltimore Line seeks a money judgment against Ms. Brophy, individually, for $119,475, plus prejudgment interest and costs.  *Id.* ¶¶ 6-9.

Notably, Baltimore Line sued the Brophys in their individual capacities, but did not sue the Brophys' businesses, "Patriot Line and Security Line LLC," ("Patriot Lines") or Vessel Operations, Inc. ("Vessel Operations").[4]  Baltimore Line averred in its Complaint that Patriot Lines was merely "a 'doing business as' name of these defendants, and not a Maryland corporation in good standing."  *Id.* ¶ 4.

As an exhibit to its Default Motion, Baltimore Line submitted an affidavit of its President, Shawn Ciociola ("First Affidavit" or "1st Aff.") (ECF 11, Ex. 2).  In relevant part, Ms. Ciociola averred that "Shannon Brophy and her late father, Kevin Brophy, *through their marine businesses 'Patriot Lines' and/or 'Vessel Operations'* contracted with Baltimore Line to manage lines to and from vessels arriving and departing Piney Point."  1st Aff. ¶ 3 (emphasis added). Ms. Ciociola posited: "Upon information and belief, 'Patriot Lines' and 'Vessel Operations' are merely alter egos of the Brophys."  *Id.* ¶ 8.  According to Ms. Ciociola, "Baltimore Line regularly sent invoices to the Brophys d/b/a 'Patriot Lines and/or 'Vessel Operations,'" and the Brophys, "d/b/a 'Patriot Lines' and/or 'Vessel Operations,'" passed those charges along to the vessels being serviced and "collected charges for Baltimore Line's services on behalf of and as fiduciaries for Baltimore Line."  However, the affiant averred that the Brophys failed to remit the monies due and owing to Baltimore Line.  *Id.* ¶¶ 4-7.

As an attachment to the First Affidavit, plaintiff provided a summary of 96 unpaid invoices, ranging in amount from $1,000 to $2,350, for a total of $119,475.  (ECF 11, Ex. 3).

---

[4] Vessel Operations is not mentioned in the Complaint, but is discussed in exhibits submitted by plaintiff in connection with the Default Motion.

The earliest invoice was dated September 13, 2006, and the latest was dated August 9, 2009. *Id.* Each invoice was "due" thirty days after the invoice date. *Id.* The summary did not state to whom the invoices were addressed.

By Letter Order entered May 18, 2010 (ECF 12), Judge Gauvey directed plaintiff to provide "the contract to which [Baltimore Line] refer[s] in paragraph 3 of the [First] Ciociola affidavit and paragraphs 1 and 8 of the complaint," as well as eight individually identified invoices. Judge Gauvey also stated:

> [Y]our complaint, at paragraph 4 states that defendants Shannon Brophy and Kevin Brophy were doing business as "Patriot Line and Security Line LLC" and that that was not a Maryland corporation in good standing. [The First] Ciociola affidavit, however, states only that "[u]pon information and belief, 'Patriot Lines' and 'Vessel Operations' are merely alter egos of the Brophys." That statement, in my view is [an] insufficient basis to enter a default judgment against the Brophys.

In response, Baltimore Line submitted the requested invoices (ECF 13, Ex. 2), as well as another affidavit of Ms. Ciociola ("Second Affidavit" or "2d Aff.") (ECF 13, Ex. 1). The Second Affidavit explained that the agreements at issue were oral, as is "common and standard in this industry," and that "there were no written contracts." 2d Aff. ¶ 14. "The terms of the oral agreements," according to Ms. Ciociola, "were that Baltimore Line would provide line handling services to vessels at Piney Point when asked to do so by the Brophys, and then submit its invoices to the Brophys, d/b/a 'Vessel Operations' and/or 'Patriot Lines' for payment." *Id.* ¶ 15.[5]

Further, Ms. Ciociola averred, *id.* ¶¶ 3-6:

> Defendants Shannon Brophy and her late father, Kevin Brophy, operated two marine businesses at Piney Point: "Vessel Operations" and "Patriot Lines" (also known as "Patriot Line and Security Line LLC" and/or "Patriot Lines and Security, LLC").

---

[5] Ms. Ciociola did not specifically state with whom or when Baltimore Line had orally contracted.

Vessel Operations, Inc. is a corporation in good standing in Maryland. It is not organized as a limited liability company.

Neither "Patriot Lines" nor "Patriot Line and Security Line LLC" are registered corporations in Maryland. "Patriot Lines and Security, LLC" was registered in 2007, but its status was forfeited in October, 2009.[6]

Baltimore Line always dealt with one of the Brophys personally whenever its services at Piney Point were needed and requested. Baltimore Line always understood—as confirmed by the Brophys['] conduct and the invoicing to the Brophys—that both "Vessel Operations" and "Patriot Lines" were merely "doing business as" names for the Brophys.

According to Ms. Ciociola, Baltimore Line began its business relationship with the Brophys, "d/b/a 'Vessel Operations,'" in September 2006. *Id.* ¶ 8. In October 2007, "the Brophys began doing business as 'Patriot Lines' and/or 'Patriot Line and Security Line LLC,'" but the same business relationship between the Brophys and Baltimore Line continued. *Id.* ¶ 12. Ms. Ciociola alleged that the Brophys, "d/b/a 'Vessel Operations' and/or 'Patriot Lines,'" acted as "agents" for the vessels arriving and departing at Piney Point, and in that capacity secured Baltimore Line's services for the vessels. *Id.* ¶ 7.

After filing the supplemental information requested by Judge Gauvey, Baltimore Line filed a Memorandum of Law in Support of Its Motion for Default Judgment ("Memorandum") (ECF 14), to address the concerns that Judge Gauvey expressed in her Letter Order. In brief, Baltimore Line contended that, as a result of Ms. Brophy's default, all of the factual allegations of its Complaint were deemed admitted. *Id.* at 1-2. According to Baltimore Line, those uncontested allegations included the fact that it entered into oral contracts with the Brophys as

---

[6] As an exhibit to Plaintiff's Memorandum of Law in Support of Its Motion for Default Judgment, Baltimore Line submitted a report from the website of the Maryland Department of Assessments and Taxation. It showed that, on October 2, 2009, Patriot Lines "was forfeited for failure to file [a] property return for 2008." (ECF 14, Ex. 3).

individuals, and that the Brophys, as individuals, breached the agreements. *Id.* at 2. Moreover, to the extent that its agreements were with either or both of the business entities operated by the Brophys, Baltimore Line contended that the Brophys themselves were also parties to the oral agreements. *Id.* at 3. Citing *Allen v. Dackman*, 413 Md. 132, 152-54, 991 A.2d 1216, 1228-29 (2010), in which the Maryland Court of Appeals held that a member of a limited liability company ("LLC") may be personally liable for a tort committed by the LLC member in the LLC's name, Baltimore Line argued that "LLC members can also be held personally liable when they are a party to a contract." Memorandum at 3. In the alternative, Baltimore Line urged Judge Gauvey to "pierce the corporate veil" of the Brophys' business enterprises. *Id.* at 3-7.

As noted, Judge Gauvey issued her Report on October 4, 2010, recommending the denial of the Default Motion. She declined to extend *Allen* beyond the context of the state tort and statutory law in which it was decided. She also concluded that Baltimore Line had not demonstrated that it was appropriate to pierce the corporate veil of the Brophys' businesses.

## Discussion

### A. Jurisdiction

Federal courts are courts of limited jurisdiction and "may not exercise jurisdiction absent a statutory basis." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). This Court has an independent obligation to verify the existence of subject matter jurisdiction. *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006). Under the "well-pleaded complaint" rule, the facts showing the existence of subject matter jurisdiction "must be affirmatively alleged in the complaint." *Pinkley, Inc. v. City of Frederick*,

191 F.3d 394, 399 (4th Cir. 1999) (citing *McNutt v. Gen'l Motors Acceptance Corp.*, 298 U.S. 178 (1936)).[7]

Plaintiff asserts that the Court has subject matter jurisdiction by virtue of the federal courts' original jurisdiction in admiralty cases. *See* 28 U.S.C. § 1333(1).[8] Whether a contract dispute lies within admiralty jurisdiction depends "on whether the principal objective of [the] contract is maritime commerce." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004). "A maritime contract is '[a] contract relating to a ship in its use as such, or to commerce or navigation on navigable waters, or to transportation by sea or to maritime employment[.]'" *J.A.R., Inc. v. M/V Lady Lucille*, 963 F.2d 96, 98 (5th Cir. 1992) (citation omitted; some alterations in original).

To be sure, "[n]ot every contract that somehow relates to a ship or its business is considered maritime. To come within the federal court's admiralty and maritime jurisdiction, 'such contracts must pertain directly to and be necessary for commerce or navigation upon navigable waters.'" *Nehring v. Steamship M/V Point Vail*, 901 F.2d 1044, 1048 (11th Cir. 1990) (citation omitted). As the Fourth Circuit recognized in *Alford v. Appalachian Power Co.*, 951 F.2d 30, 32 (4th Cir. 1991), "navigable waters" in the context of admiralty jurisdiction are

---

[7] Because the defendant has defaulted, the Court must consider its subject matter jurisdiction based solely on the well-pleaded facts of the Complaint. *See Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 81 n.5 (D.D.C. 2006); *see also Morris v. Khadr*, 415 F. Supp. 2d 1323, 1332 (D. Utah 2006) ("[W]hen inquiring into its subject matter jurisdiction before entering default judgment, the court should require only a *prima facie* showing that subject matter jurisdiction exists. And when deciding whether plaintiffs have made a *prima facie* showing of subject matter jurisdiction, the court 'must construe all relevant allegations in the light most favorable to the plaintiff.'").

[8] The Complaint raises only a single common law breach of contract count, and the parties are all citizens of Maryland. *See* Complaint ¶¶ 2-3, 8. Therefore, neither federal question jurisdiction nor diversity jurisdiction applies here. *See* 28 U.S.C. §§ 1331 & 1332(a).

waterways that are "capable of use for transportation between the states or with foreign nations." Conversely, a "body of water that is confined within a state and does not form part of an interstate waterway is not an admiralty concern." *Id.* Thus, while a contract need not actually be made or performed on navigable waters to be "maritime," it must have a sufficient connection to commerce on navigable waters to come within admiralty jurisdiction.

In considering jurisdiction, "lower courts should look to the subject matter of the . . . contract and determine whether the services performed under the contract are maritime in nature." *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 612 (1991). In other words, maritime contract jurisdiction is "conceptual rather than spatial," *Norfolk*, 543 U.S. at 23, in that it is governed by "whether [the contract at issue] has 'reference to maritime service or maritime transactions,'" rather than "simply [whether] the place of the contract's formation or performance" is on land or sea. *Id.* at 24.[9] "[T]he question is whether the transaction relates to ships and vessels, masters and mariners, as the agents of commerce, on navigable waters." 1 BENEDICT ON ADMIRALTY § 181, at 12-2 (7th ed. rev. 1974, Dec. 2010 Supp.).

According to the Complaint, the contracts at issue here were for "line handling services." Although I am unaware of another case specifically considering whether a line handling contract is maritime, line handling appears to fit comfortably within the class of direct, nautical services to vessels that have been held to support maritime contract jurisdiction, such as "[a] stevedoring contract; a contract to supply marine fuel; a contract for lease of cargo shipping containers; . . .

---

[9] Unlike tort cases, admiralty jurisdiction in contract cases does not depend on a "locus" or on "nexus" to a particular body of water. *See, e.g., Phila., Wilmington, & Balto. R.R. v. Phila. & Havre De Grace Steam Towboat Co.*, 64 U.S. (23 How.) 209, 215 (1859) ("The jurisdiction of courts of admiralty, in matters of contract, depends upon the nature and character of the contract; but in torts, it depends entirely upon locality.").

for removing ballast; for lockage in a river; for wharfage; for laying up a vessel; . . . for the service of a diver; . . . for supplying nets to a fishing vessel; . . . and a towing contract." *Id.* § 184, at 12-16 to 12-20 (footnotes omitted) (collecting cases).[10]

Baltimore Line does not explicitly plead that the marine activity at the Piney Point terminal that was the subject of the alleged agreements was carried out in furtherance of commerce on "navigable waters," *i.e.*, interstate or international waterways. However, the Court takes judicial notice that Piney Point, Maryland is situated on the Chesapeake Bay, at the mouth of the Potomac River, and that both the Chesapeake and the Potomac are navigable bodies of water in use in interstate commerce. *See United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984) (geographical information that is "'generally known within the territorial jurisdiction of the trial court'" is "especially appropriate for judicial notice") (citations omitted); *see also Arizona v. California*, 283 U.S. 423, 452 (1931) ("[A] court may take judicial notice that a river within its jurisdiction is navigable."). Accordingly, I am satisfied that the Court possesses subject matter jurisdiction here.

---

[10] Admiralty jurisdiction is not defeated by the fact that Baltimore Line allegedly contracted with the Brophys—who in turn contracted with the vessel operators—rather than contracting with the vessel operators directly. In *Exxon*, *supra*, 500 U.S. 603, the Supreme Court held that admiralty jurisdiction encompassed a contract by which an intermediary party arranged for a supplier of a maritime service (in that case, delivery of marine fuel) to provide that service to vessels. *Id.* at 612. In so holding, the *Exxon* Court expressly overruled *Minturn v. Maynard*, 58 U.S. (17 How.) 477 (1854), which had "been interpreted by some lower courts as establishing a *per se* rule excluding agency contracts from admiralty." *Exxon*, 500 U.S. at 605; *see id.* at 612 ("*Minturn* is incompatible with current principles of admiralty jurisdiction over contracts and therefore should be overruled. . . . Rather than apply a rule excluding all or certain agency contracts from the realm of admiralty, lower courts should look to the subject matter of the agency contract and determine whether the services performed under the contract are maritime in nature.").

B.  Governing Law

Ordinarily, "[w]ith admiralty jurisdiction comes the application of substantive admiralty law." *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986).  The body of substantive admiralty law "is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules," *id.* at 864-65, developed in service of the overriding principles of "harmony and uniformity" that form a primary rationale for federal admiralty jurisdiction.  *Parker v. Motor Boat Sales*, 314 U.S. 244, 248 (1941).  "But it does not follow . . . that every term in every maritime contract can only be controlled by some federally defined admiralty rule."  *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313 (1955).  "Uniformity is required only when the essential features of an exclusive federal jurisdiction are involved." *Just v. Chambers*, 312 U.S. 383, 392 (1941).

In *Kossick v. United Fruit Co.*, 365 U.S. 731, 738 (1961), the Supreme Court made clear that state law may govern in an admiralty case if "the alleged contract, though maritime, is 'maritime and local,' in the sense that the application of state law would not disturb the uniformity of maritime law."  *Id.* at 738 (citations omitted).  *See Norfolk*, 542 U.S. at 22-23 (applying *Kossick*); *McMellon v. United States*, 338 F.3d 287, 303 (4th Cir. 2003) (stating that "admiralty courts may apply state law" so long as application of state law would not "'frustrate national interests in having uniformity in admiralty law'") (citation omitted).

In this case, all of the parties are Maryland citizens; the business entities at issue were all created under Maryland law; and all of the alleged events, including the rendering of line handling services and the alleged agreements, took place in Maryland.  Moreover, as discussed, *infra*, the relevant principles for decision primarily concern the law of corporations and business

- 11 -

associations, which are generally creatures of state law; "there is no body of federal law of corporations." *FEC v. Nat'l Right to Work Cmte.*, 459 U.S. 197, 204 (1982). Accordingly, in resolving whether plaintiff has alleged facts to support a breach of contract claim against Ms. Brophy, personally, the Court will apply the law of Maryland.

## C.  Default Judgment

Upon a showing that a party against whom judgment is sought has failed to plead or otherwise defend, the clerk must enter the party's default. Fed. R. Civ. P. 55(a). After the clerk has entered a default, the plaintiff may seek a default judgment. *See* Fed. R. Civ. P. 55(b). Entry of default judgment "is left to the discretion of the court." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). To be sure, it is the "'strong policy'" of the Fourth Circuit to decide cases on their merits. *Id.* (citation omitted). But, default judgment may be proper if "the adversary process has been halted because of an essentially unresponsive party." *Id.*

Upon default, the well-pleaded factual allegations of the complaint regarding liability are deemed admitted, in contrast to the allegations regarding damages. *Id.* at 422; *see* Fed. R. Civ. P. 8(b)(6) (a defaulting party is deemed to admit factual allegations of the plaintiff's complaint, "other than [those] relating to the amount of damages"). Although a defaulting party "'admits the plaintiff's well-pleaded allegations of fact'" as to liability, the party in default is "'not held . . . to admit conclusions of law'" or allegations regarding liability that are not "well-pleaded." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citation omitted). Thus, "'a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.'" *Id.* (citation omitted). *See also* 10A Wright, Miller & Kane, Federal Practice & Procedure, § 2688, at 60-61 (3d ed. 1998) ("Wright, Miller")

("[L]iability is not deemed established simply because of the default, and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

A plaintiff's allegations regarding liability are not regarded as well-pleaded (and thus not admitted) if the allegations are "'made indefinite or erroneous by other allegations in the same complaint,'" or the allegations "'are contrary to uncontroverted material in the file of the case.'" *Id.*, § 2688, at 62 (quoting *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)). *See Danning v. Levine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Put another way, the papers of record cannot support a default judgment if "they disclose on their face a fact that would defeat the [plaintiff's] claim." *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

When reviewing a motion for default judgment, "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action . . . ." 10A Wright, Miller, § 2688, at 63. "The court must, therefore, determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought . . . ." *Ryan*, 253 F.3d at 780.

As to damages, when the "plaintiff's claim is for a sum certain or a sum that can be made certain by computation," the clerk must enter a default judgment on the plaintiff's affidavit. Fed. R. Civ. P. 55(b)(1).[11] But, a mere "generalized statement of the amount due in [the] plaintiff's complaint" does not establish a "sum certain" for purposes of Rule 55(b)(1). 10A Wright,

---

[11] Under Fed. R. Civ. P. 54(c), the relief granted in a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000) ("courts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount").

MILLER, § 2683, at 23 (citing *Anderson v. United States*, 182 F.2d 296, 297 (1st Cir. 1950)).

Federal Rule of Civil Procedure 55(b)(2) is also relevant. It provides, in part:

> The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

When damages are contested by the defendant, the court ordinarily must hold a hearing to establish the amount of damages. *See, e.g.*, *Ins. Servs. of Beaufort, Inc. v. Aetna Cas. & Surety Co.*, 966 F.2d 847, 853 (4th Cir. 1992). Although "[p]roceeding without a hearing is the exception," the court may award damages without a hearing if "the record supports the damages requested," such as through comprehensive, detailed, and uncontroverted exhibit and affidavit evidence establishing the amount of damages. *Monge v. Portofino Ristorante*, ___ F. Supp. 2d ____, ____, 2010 WL 4629898, at *3 (D. Md. May 25, 2010) (citing, *inter alia*, *Greyhound Exhibitgroup, Inc. v. E.L. U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Virgin Records Am., Inc. v. Lacey*, 510 F. Supp. 2d 588, 593 (S.D. Ala. 2007); *U2 Home Entm't, Inc. v. Fu Shun Wang*, 482 F. Supp. 2d 314, 318 (E.D. N.Y. 2007)). *See Stephenson v. El-Batrawi*, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute abuse of discretion when the existing record is insufficient to make necessary findings in support of a default judgment."); *see also* 10A WRIGHT, MILLER, § 2688, at 57-58 & 63-70.

In its Objection/Response, Baltimore Line contends that Judge Gauvey "rewrites several of the factual allegations" in its Complaint, so as to "make[] it appear that Baltimore Line[] has alleged wrongdoing by one or more corporate entities, while only seeking damages from the individuals behind those entities." Objection/Response at 1. Plaintiff strenuously insists that it

"has always alleged that it contracted with the Brophys *individually*, that the Brophys['] terminal operations were managed *individually*, that Baltimore Line[] invoiced the Brophys *individually*, and that the Brophys were *individually* liable for Baltimore Lines' [sic] damages." *Id.* (emphasis in original).

Upon *de novo* review of the record, I agree with Judge Gauvey that the Complaint, and the exhibits submitted in support of the Default Motion, do not support Baltimore Line's claim that it contracted with Ms. Brophy, individually. To the contrary, the current state of the record indicates that plaintiff contracted with the business entities, rather than the individuals.

The Complaint suggests on its face that plaintiff contracted with a business organization. As noted, Baltimore Line explicitly alleged in the Complaint that the Brophys "conducted and managed terminal operations at Piney Point . . . *doing business as 'Patriot Line and Security Line, LLC.'*" Complaint ¶ 4 (emphasis added). Although plaintiff also alleged that "[t]his was a 'doing business as' name of these defendants, and not a Maryland corporation in good standing," *id.*, plaintiff's president affirmatively alleged in the First Affidavit that the Brophys contracted with Baltimore Line "*through their marine businesses.*" 1st Aff. ¶ 3 (emphasis added).[12]

In the Second Affidavit, plaintiff's president averred that the Brophys conducted business at Piney Point through "Vessel Operations, Inc." from September 2006, *see* 2d Aff. ¶ 8, until October 2007, when "the Brophys began doing business as 'Patriot Lines' and/or 'Patriot Line and Security Line LLC.'" *Id.* ¶ 12. Ms. Ciociola confirmed that "Vessel Operations, Inc. is a

---

[12] Under Maryland law, the abbreviation "LLC" designates a limited liability company, *see* Md. Code (2007, 2009 Supp.), § 1-502(b) of the Corporations & Associations Article, and it is a misdemeanor to use such an abbreviation in the name of an unincorporated organization other than a limited liability company. *Id.*, § 1-404. The bare allegation that a business name containing that abbreviation is only a "d/b/a" name strikes the Court as conclusory.

corporation in good standing in Maryland." *Id.* ¶ 4. Moreover, she stated that "'Patriot Lines and Security, LLC' was registered in 2007" with the State of Maryland as an LLC, and that "its status was forfeited in October, 2009." *Id.* ¶ 5. Notably, the date of the last invoice for which plaintiff claims non-payment was August 9, 2009 (due September 8, 2009)—*before* the forfeiture of Patriot Lines' LLC status. (ECF 11-3).

To be sure, Ms. Ciociola also alleged in the Second Affidavit that "Baltimore Line always understood—as confirmed by the Brophys['] conduct and the invoicing to the Brophys— that both 'Vessel Operations' and 'Patriot Lines' were merely 'doing business as' names for the Brophys." 2d Aff. ¶ 6. But, she did not allege what "conduct" of the Brophys led Baltimore Line to that understanding, and, simply put, plaintiff's "understanding" does not make it so. To the contrary, the Second Affidavit made clear that the Brophys' businesses were *not* mere "d/b/a names," but were, at the relevant times, business entities in good standing with the State of Maryland.

As Judge Gauvey's Report explains, both corporations and LLCs are instrumentalities of business that afford significant protection from individual liability under Maryland law. *See* Md. Code (2006 Repl. Vol., 2009 Supp.), § 5-417 of the Courts & Judicial Proceedings Article (limitation of liability for directors of corporations); Md. Code (2007 Repl. Vol., 2009 Supp.), § 4A-301 of the Corporations & Associations Article (absent statutory exceptions, a member of an LLC is not "personally liable for the obligations of the limited liability company, whether arising in contract, tort or otherwise, solely by reason of being a member of the limited liability company"). Indeed, Maryland law "is in accord with the general rule that in the absence of statute except where fraud is involved a corporate officer is not personally liable on a corporate

contract with a third person." *A. B. Corp. v. Futrovsky*, 259 Md. 65, 79, 267 A.2d 130, 137 (1970).

In the seminal Maryland case of *Curtis G. Testerman Co. v. Buck*, 340 Md. 569, 667 A.2d 649 (1995), the Court said: "The rule in Maryland is clear that 'if an agent fully discloses the identity of his principal to the third party, then, absent an agreement to the contrary, he is insulated from liability. However, this is subject to exception when the purported principal that is disclosed is nonexistent or fictitious; or when the principal is legally incompetent.'" *Id.* at 576-77, 667 A.2d at 653 (citation omitted). *See also Mowbray v. Zumot*, 533 F. Supp. 2d 554, 564 & n.12 (D. Md. 2008) (holding LLC member not personally liable in contract action where he entered contract in capacity as "Executive Officer" and "Member" of LLCs); *Ace Development Co. v. Harrison*, 196 Md. 357, 366, 76 A.2d 566, 570 (1950) ("[W]hen an official or agent signs a contract for his corporation it is simply a corporate act. It is not the personal act of the individual, and he is not personally liable for the corporate contract unless the matter is tainted by fraud . . . ."); *Burkhouse v. Duke*, 190 Md. 44, 46-47, 57 A.2d 333, 334 (1948) ("'Whenever, upon the face of an agreement, a party contracting plainly appears to be acting as the agent of another, the stipulations of the contract are to be considered as solely to bind the principal . . . .'") (citation omitted); *Brock Bridge Ltd. P'shp. v. Development Facilitators*, 114 Md. App. 144, 164, 689 A.2d 622, 632 (1997) ("Adherence to corporate form is usually appropriate while analyzing the terms of a contract. If the president of a company signs a contract as the president, intending to bind only the company, then the foundation of contract law—to divine the intent of the parties to the contract—dictates that only the company be bound.").

Only three contentions of the Complaint and supporting affidavits purport to provide a basis for the claim that Baltimore Line contracted with Ms. Brophy individually. All three contentions are insufficient, in my view. First, the Complaint contends that Patriot Lines was a "'doing business as' name of [the Brophys], and not a Maryland corporation in good standing." Complaint ¶ 4. But, as the Second Affidavit made clear, the two business entities the Brophys operated, Vessel Operations and Patriot Lines, were registered and in good standing with the State of Maryland at the relevant times.[13]

Second, Ms. Ciociola averred in the First Affidavit, "[u]pon information and belief," that "'Patriot Lines' and 'Vessel Operations' are merely alter egos of the Brophys." 1st Aff. ¶ 8. An allegation made "upon information and belief" does "not serve as a reliable foundation upon which to predicate a final judgment." *Oceanic Trading Corp. v. Vessel Diana*, 423 F. 2d 1, 4-5 (2d Cir. 1970) (vacating default judgment that was based on factual assertions made "upon information and belief"); *cf. Malina v. Baltimore Gas & Elec. Co.*, 18 F. Supp. 2d 596, 604 n.4 (D. Md. 1998) (holding that affidavits based upon information and belief are insufficient to support or oppose summary judgment).

Finally, the Second Affidavit states that "Baltimore Line always dealt with one of the Brophys personally," and that "Baltimore Line always understood—as confirmed by the Brophys['] conduct and the invoicing to the Brophys—that both 'Vessel Operations' and 'Patriot

---

[13] It is of no moment that the Brophys apparently sometimes referred to the LLC as "Patriot Lines" or as "Patriot Line and Security Line LLC," rather than its precise name, "Patriot Lines and Security, LLC." Maryland law is well established that "a simple misnomer in the corporate name" is insufficient to hold an agent of the corporation individually liable for corporate obligations. *Curtis G. Testerman*, 340 Md. at 575-76, 667 A.2d at 652 (opining that plaintiffs "knew that they were dealing with a specific corporation" despite company president's execution of contract in name of "Curtis G. Testerman, Inc.," rather than the true name "Curtis G. Testerman, Co.").

Lines' were merely 'doing business as' names for the Brophys." 2d Aff. ¶ 6. Yet, "a corporation can only act through its agents," *Western Md. Wireless Connection v. Zini*, 601 F. Supp. 2d 634, 643 (D. Md. 2009), and so it is not probative that Baltimore Line always dealt personally with one of the Brophys. Moreover, as discussed *supra*, the business entities were not mere "d/b/a" names. And, although Ms. Ciociola averred that Baltimore Line invoiced "the Brophys d/b/a 'Patriot Lines and/or 'Vessel Operations,'" 1st Aff. ¶ 4, the invoices themselves (selected examples of which were submitted by plaintiff with the First Affidavit) were not addressed in that manner. Rather, as Judge Gauvey observed, the invoices were addressed to "Vessel Operations ATT[ention] Kevin Brophy" or "Patriot Lines ATT[ention] Shannon Brophy." (ECF 11-3). In some instances, an invoice was addressed to the business name on the first line, followed by a second line containing the individual name of one of the Brophys, without the "ATT[ention]" indicator. In either event, the fact that the invoices were primarily addressed to the business entities, and only secondarily addressed to Ms. Brophy or her father, is a powerful indicator that Baltimore Line was dealing with a business entity.

The larger problem, common to all of the foregoing contentions, is that none of them is "well-pleaded," as that term is understood after the Supreme Court's recent decisions in *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). Although no opinion of the Fourth Circuit has yet applied the *Iqbal/Twombly* pleading standard in the context of default judgment, several recent unreported district court opinions, including two within this circuit, have found *Iqbal* relevant to the default judgment inquiry. *See, e.g.*, *Osprey Special Risks Ltd. v. Ocean Ins. Mgmt., Inc.*, 2011 WL 32422 (M.D. Fla. Jan. 5, 2011) (*Iqbal* standard "applies equally to a motion for entry of default

judgment"); *Wynne v. Birach*, 2009 WL 3672119, at *2 n.6 (E.D. Va. Nov. 3, 2009) (default judgment standard is "similar to that applied to a motion to dismiss" under *Iqbal*); *Bogopa Serv. Corp. v. Shulga*, 2009 WL 1628881 (W.D.N.C. June 10, 2009) (opining that the standard for grant of default judgment "is the same" as the *Iqbal* standard, and rejecting claim for personal liability of corporate officer where complaint contained no "factual allegations as to what [officer] has done or on what basis he would be personally liable for . . . corporate [service mark] infringement").

To the extent that *Iqbal* and *Twombly* are instructive in this case, plaintiff's allegations as to Ms. Brophy's individual liability fall below the pleading threshold those cases establish. Under *Iqbal*, a complaint fails to state a claim entitling the pleader to relief if the complaint offers only "'labels and conclusions'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)). As the Fourth Circuit has recognized, "'the court need not accept the legal conclusions drawn from the facts, and [ ] need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Monroe v. City of Charlottesville*, 579 F.3d 380, 385-86 (4th Cir. 2009) (citation omitted); *accord Simmons v. United Mortg. & Loan Investment, LLC*, ___ F.3d ___, ___, No. 09-2147, slip op. at 22 (4th Cir. Jan. 21, 2011). Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

Here, Baltimore Line's bare assertions that the business entities were "alter egos" of the Brophys, and that it "understood" that it was dealing with the Brophys personally, are simply

opinions and conclusions masquerading as factual allegations. The record lacks any specific allegations of fact that "show" why those conclusions are warranted.

Moreover, the facts, as alleged, indicate that Baltimore Line was doing business with the corporate entities, and not with the Brophys as individuals. In particular, Baltimore Line's invoices were addressed primarily to the business entities; in its Memorandum, plaintiff stated that the invoices were addressed to the business entities "per the Brophys' instructions"; and, on the occasions when Baltimore Line's invoices were paid, "the Brophys paid from an account in the name of 'Patriot Line and Security Line LLC.'" Memorandum at 5.

*Nishimatsu*, *supra*, 515 F.2d 1200, a leading default judgment case, is factually similar to the case at bar. In *Nishimatsu*, two firms, South East Construction Company ("Secon") and Nishimatsu, made a contract for the provision of engineering studies. *Id.* at 1203. An individual named Jack Baize signed the contract on behalf of Secon. *Id.* Nishimatsu sued Baize individually for a breach of the contract, and obtained a default judgment against him. *Id.* The Fifth Circuit reversed. The appellate court observed that Baize had signed the contract by writing Secon's name, followed by "By: Jack D. Baize." *Id.* at 1205 (alterations omitted). According to the Fifth Circuit, the allegation of Nishimatsu's complaint that both Baize and Secon were parties to the contract was "contradicted and controlled by the contract showing that Baize signed only as an agent." *Id.* at 1206. Applying Texas law, the *Nishimatsu* Court reasoned that, "if an agent signs a contract for a disclosed principal, he does not intend to make himself a party to the instrument,"[14] and the signature form used by Baize was "uniformly regarded as indicating that the principal alone and not the agent is a party to the contract." *Id.* at

---

[14] As noted, Maryland law is to similar effect.

1207.  The contract, the court concluded, "binds only Secon.  The complaint, to the extent that it

seeks relief against Baize on that contract, is incapable of supporting the default judgment."  *Id.*

at 1208.

Similarly, in *Marshall v. Baggett*, 616 F.3d 849 (8th Cir. 2010), the Eighth Circuit

reversed a default judgment entered against an individual, where, as in *Nishimatsu*, the individual

defendant had executed the contract at issue in the name of the company, "by" the individual.  *Id.*

at 851.  In that case, the plaintiffs styled their complaint as a suit against the defendant, "'Theresa

Baggett d/b/a Baggett Masonry, Inc.,'" and alleged that "Ms. Baggett 'is an individual and

operates a construction company doing business in the State of Nebraska.'"  *Id.* (quoting

complaint).  In reversing the default judgment, the appellate court explained that the plaintiffs'

"use of the 'd/b/a' styling in the caption of the complaint and the allegation that Ms. Baggett 'is

an individual and operates a construction company . . .' do not equate to an allegation" that the

company was a dissolved entity.  *Id.* at 855.  Rather, the record as to default judgment

"demonstrate[d] that Ms. Baggett signed in an official capacity on behalf of the corporation," and

therefore the plaintiffs were required to "counter that fact with a factual assertion as to why Ms.

Baggett instead bound herself as an individual."  *Id.*

In sum, the Eighth Circuit held, *id.* at 853-54:

> We conclude that for the plaintiffs to prevail against actions taken by Ms.
> Baggett in her role as a corporate officer, we must find a theory in the complaint
> to support imposing personal liability.  Yet, we find nothing in the complaint to
> support an assertion that Baggett Masonry, Inc. was a sham corporation or an
> indistinct identity of Ms. Baggett.  There are also no allegations of fraud or other
> illegal machinations.  The Agreement is clear on its face that Ms. Baggett
> executed the contract in her official capacity as president of Baggett Masonry,
> Inc.  Accordingly, she cannot be held individually liable for the allegedly
> delinquent payments of the corporation.

To be sure, both *Nishimatsu* and *Marshall* involved written contracts. And, in each case, the particular contract made clear that the defendant had executed the document in a representative capacity. In contrast, this case concerns a series of oral agreements. However, as discussed, *supra*, the facts that are extant from the record, including Baltimore Line's awareness of the corporate names of the Brophys' businesses; its addressing of its invoices to those businesses, at the Brophys' instructions; and the Brophys' payment of invoices from a corporate account, are indicative of corporate, rather than personal, liability. Notably absent is any allegation by Baltimore Line of even a single statement made by either Ms. Brophy or her father that points to the opposite conclusion.[15]

This case is also similar to *Wolfe v. Lamar & Wallace, Inc.*, 261 Md. 174, 274 A.2d 121 (1971), albeit in a different procedural posture. In *Wolfe*, the Maryland Court of Appeals reversed a grant of summary judgment in favor of a plaintiff company seeking payment for construction materials it had supplied to the two defendants, individuals named Wolfe and Ginsburg. *Id.* at 175-76, 274 A.2d at 122. In opposition to the plaintiff's motion for summary judgment, the defendants had filed an affidavit, in which they averred that, at all relevant times, they "'did business as Wolfe-Ginsburg Const., Inc., a Maryland corporation'"; that the construction sites where the plaintiff delivered materials to the defendants "'were marked with a sign "Wolfe-Ginsburg Const., Inc.," which . . . was located in a conspicuous place [and] was

---

[15] It is also noteworthy that, although Baltimore Line alleges that the agreements at issue were oral, it has not alleged facts to show which of the 96 oral agreements were made with Shannon Brophy, which were made with her late father, or when any of them were made. Nor has Baltimore Line alleged facts to show that father and daughter were jointly liable for each other's debts, or, alternatively, the portion of the debt for which Ms. Brophy is personally liable, out of the total $119,475 that plaintiff has requested. Thus, the record at this stage could not support a default judgment against Ms. Brophy for a sum certain even if the Court accepted plaintiff's claim that she contracted with Baltimore Line personally.

constructive notice that defendants were operating as a corporation and not as individuals and was further actual notice to the Plaintiff'"; and that partial payment for the materials the plaintiff had supplied had been made through a corporate account. *Id.* at 176-77, 274 A.2d at 122-23. The Court of Appeals held that these allegations established "a genuine dispute in respect of a fact which is not only material but which seems to go to the very heart of the matter": whether the defendants were personally liable for the debt at issue. *Id.* at 178, 274 A.2d at 123.

Plaintiff complains that Judge Gauvey's "exhaustive analysis of the doctrines of limited liability and piercing the corporate veil . . . [is] unnecessary and tangential" if the Court accepts plaintiff's contention that it has successfully pleaded the individual liability of Ms. Brophy. Yet, Baltimore Line did not renew its argument in support of piercing the corporate veils of the Brophys' business entities. Therefore, I review Judge Gauvey's Report as to piercing the corporate veil only for clear error, *see Diamond*, *supra*, 416 F.3d at 315-16, and I find none.

In Maryland, courts will disregard the corporate form only "'where it is necessary to prevent fraud or enforce a paramount equity.'" *Starfish Condominium Ass'n v. Yorkridge Serv. Corp.*, 295 Md. 693, 714 (1983) (quoting *Bart Arconti & Sons v. Ames-Ennis*, 275 Md. 295, 310 (1975)). For the reasons stated at length in Judge Gauvey's Report, *see* Report at 6-17, plaintiff has not alleged facts *at this juncture* that are sufficient to justify piercing the veils of the business entities.[16]

---

[16] One recent unreported decision from the Eastern District of Tennessee contrasts with *Nishimatsu*, *Marshall*, and the case *sub judice*, and exemplifies the type of allegations that would suffice to establish individual liability for corporate obligations in the context of default judgment. In *Defender Services, Inc. v. Mathis Companies, Inc.*, 2009 WL 1346032, at *1 (E.D. Tenn. May 12, 2009), a construction subcontractor sued its contractor, Mathis Companies, and the contractor's sole shareholder, James Mathis, over unpaid invoices for construction labor services. Neither defendant answered, and the court entered default judgment against both

Accordingly, the Court will overrule plaintiff's Objections/Response (ECF 19), adopt Magistrate Judge Gauvey's Report and Recommendations (ECF 17), and deny, without prejudice, plaintiff's motion for entry of default judgment (ECF 11).[17]

## D. Sanctions Motion

Baltimore Line filed its Sanctions Motion (ECF 21) on December 22, 2010. According to the Sanctions Motion and its accompanying exhibits, on November 26, 2010, Baltimore Line served on Ms. Brophy a notice and subpoena to attend, answer questions, and produce documents at a deposition to be held on Monday, December 20, 2010. Sanctions Motion at 2. On Friday, December 17, 2010, Ms. Brophy telephoned plaintiff's counsel to inquire whether the deposition could be postponed. *Id.* at 2-3. Plaintiff's attorney asked Ms. Brophy whether she was represented by counsel, and she gave the names of a "family attorney" and a "bankruptcy attorney." *Id.* at 3. Plaintiff's counsel contacted both attorneys, each of whom informed counsel that, although Ms. Brophy had consulted with them about the possibility of representation, she

---

defendants. *Id.* The court found that the plaintiff's complaint adequately stated a claim to pierce the veil of the corporate defendant and hold both defendants jointly and severally liable, explaining, *id.* at *2:

> [Plaintiff's] complaint alleges Mathis Companies, Inc., was grossly undercapitalized, never issued any stock certificates, was owned solely by James Mathis, used James Mathis's residence as its business address, was used as an instrumentality or business conduit for James Mathis, had its assets diverted to James Mathis and others to Plaintiff's detriment, and was used by James Mathis as a subterfuge in illegal and fraudulent activities.

[17] The Court is cognizant that, as Baltimore Line observed in its Memorandum, "[b]ecause Brophy has refused to participate in this litigation, Baltimore Line does not have access to much of the evidence it [would] need[]" to prove facts sufficient to justify piercing the corporate veil of the Brophys' business interests. *Id.* at 5. For this reason, the Court has denied the Default Motion without prejudice, and will issue a Scheduling Order governing discovery.

had not retained either attorney in this action. *Id.* Plaintiff's counsel then left a voicemail message for Ms. Brophy explaining that the deposition would take place as scheduled. *Id.*

On December 20, 2010, Ms. Brophy appeared at the deposition without an attorney and refused to answer any questions propounded by plaintiff's counsel. *Id.* Plaintiff's counsel informed Ms. Brophy that her refusal to answer would lead to a motion for sanctions and an order compelling her to answer. *Id.* After the deposition concluded, plaintiff's counsel contacted Ms. Brophy's family attorney, whom she had mentioned by name at the deposition, and confirmed that he had not been retained by Ms. Brophy. *Id.*; *see also* Tr. of Deposition at 4 (ECF 21, Ex. 3).

In its Sanctions Motion, plaintiff asks the Court to sanction Ms. Brophy by awarding plaintiff $182.50 in deposition transcription expenses and $750 in attorney's fees. Baltimore Line also requests that the Court order Ms. Brophy to attend a rescheduled deposition, "fully respond to each of Baltimore Lines' [sic] deposition questions," and produce all of the documents identified in Baltimore Line's subpoena.[18] Sanctions Motion at 5.

Federal Rule of Civil Procedure 37(a) governs motions for discovery sanctions and orders compelling discovery. Under Rule 37(a)(3)(B)(i), such a motion is appropriate where a deponent fails to answer questions asked at a deposition. However, pursuant to Local Rule 104.4, "[u]nless otherwise ordered by the Court or agreed upon by the parties, . . . discovery shall not commence and disclosures need not be made until a scheduling order is entered." To date, no

---

[18] In the body of the Sanctions Motion, Baltimore Line also requested that the Court shorten until December 30, 2010, Ms. Brophy's time to respond to the Sanctions Motion, due to Ms. Brophy's "inexcusable tactics." Sanctions Motion at 5. Given that Ms. Brophy's time to respond to the Sanctions Motion in ordinary course expired on January 10, 2011, before the Court ruled on the motion, the request to shorten time is denied as moot.

scheduling order has been entered in this case.  Therefore, Baltimore Line's attempt to depose Ms. Brophy was premature and in violation of the local rule.  *See, e.g.*, *Madison v. Harford County*, 268 F.R.D. 563, 565 (D. Md. 2010); *Kemp v. Harris*, 263 F.R.D. 293, 294-95 (D. Md. 2009); *Brownscombe v. Dept. of Campus Parking*, 203 F. Supp. 2d 479, 485 (D. Md. 2002).

Nevertheless, Ms. Brophy's conduct was also improper.  The proper response to an improper deposition subpoena is not simply to refuse to answer.  After first attempting in good faith to resolve the dispute without court action, *see* Local Rule 104.7, the named deponent has several options:  she may file a motion for a protective order, *see* Fed R. Civ. P. 26(c); move to quash the subpoena, *see* Fed. R. Civ. P. 45(c)(3); or move to terminate or limit the deposition, *see* Fed. R. Civ. P. 30(d)(3).  *See Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 581-85 (D. Md. 2010) (discussing proper resolution of deposition disputes); *Madison*, 268 F.R.D. at 565 (explaining that proper response to a premature discovery request is to respond in the form of an objection or to move for a protective order).  Defendant did none of the above.

In light of plaintiff's violation of Local Rule 104.4 in prematurely scheduling the original deposition, the Court will not assess attorney's fees against defendant for her refusal to answer.  But, given defendant's improper conduct, the Court will assess the transcription costs to Ms. Brophy as a discovery sanction.  *See* Fed. R. Civ. P. 37 (a)(5)(C).

A separate Order and a Scheduling Order implementing the foregoing rulings follow.

_____/s/_____
Ellen Lipton Hollander
United States District Judge

Date: February 2, 2011